## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

XAVIER MUNOZ,

                PLAINTIFF,

                        CASE NO: 1:20-CV-984

V

                        HON. ROBERT J. JONKER

                        MAG. SALLY J. BERENS

PHILIP STRONG, DEAN OF STUDENTS
          IN HIS OFFICIAL CAPACITY,

MACKENZIE FRITTS, ASSOCIATE DEAN
               OF STUDENTS
          IN HER OFFICIAL CAPACITY,

STEVE SHABLIN, UNIVERSITY REGISTRAR
          IN HIS OFFICIAL CAPACITY,

TANYA JACHIMIAK, TITLE IX COORDINATOR
          IN HER OFFICIAL CAPACITY,

                DEFENDANTS.

ATTORNEY FOR PETITIONER:
 THE NICHOLS LAW FIRM, PLLC
  BY: MICHAEL J. NICHOLS (P59391)
  3452 East Lake Lansing Road
  East Lansing, Michigan 48823
  (517) 432-9000

ATTORNEY FOR RESPONDENT:
 MSU OFFICE OF GENERAL COUNSEL
  BY: URIEL ABT (P84350)
  426 Auditorium Road, Rm 494
  East Lansing, Michigan 48824-2600
  (517) 884-9483

### PLAINTIFF'S RESPONSE TO MOTION TO DISMISS-CORRECTED

**INTRODUCTION**

Defendants bring this motion to dismiss arguing the same cloak of 11th Amendment protections that was presented in the previously-filed motion to dismiss (ecf 21) in this matter. The Defendants also add some new procedural arguments in this new motion regarding the alleged lack of any involvement in this case by the individual Defendants who are now-named in the 2nd Amended Complaint. The motion to dismiss should be denied because the Plaintiff, Xavier Munoz (Mr. Munoz) is seeking prospective injunctive relief and, at least 1 Defendant most-certainly had a role in the investigation and subsequent discipline decision that was followed by retaliatory discipline. In any event, Mr. Munoz needs discovery to determine who did what and what direction the Defendants gave in his matter either directly or implicitly.

Discovery is necessary to determine who played what role in this pitiable attempt at creating the veneer of due process by the Defendants, whether it was the Defendants acting directly or their subservient employees of Michigan State University (MSU) acting with either the express or implied direction of the Defendants or with their acquiesced approval. Discovery is also necessary to develop facts about what the investigators for the Office of Institutional Equity (OIE) knew (as opposed to believed) and why Mr. Munoz was afforded no due process including the lack of any type of a hearing concerning an allegation of stalking in violation of the MSU policy against Relationship Violence and Sexual Misconduct (RVSM)(Exhibit 2). The Registrar is the office that likely houses his records and would be the point of contact to disseminate his record containing the suspension and warning letter for which he seeks injunctive relief and so an injunction would ostensibly be directed to Defendant Shablin, or perhaps Defendant Strong.

2

## <u>STANDARD OF REVIEW</u>

A 12(b)(6) motion simply tests the sufficiency of the pleadings and does not resolve the facts of the case. The standard for such a dismissal is a high one: "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, (1957). In reviewing the complaint, the court must accept facts in the complaint as true, and construe all facts pled in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, (1974).

The Defendants attached 3 exhibits to the brief in support of the motion. "Generally, a district court may not consider matters outside the pleadings when ruling on a 12(b)(6) motion to dismiss without converting the motion into one for summary judgment under Federal Rule of Civil Procedure 56," (Fed RCivP 12(d); *Kirsch v Dean,* 16-CV-00299-CRS LEXIS 174744, W.D. K.Y., Dec. 16, 2016 ).

The predominate problem with granting the motion under FRCP 56 is that no discovery has been allowed and all of the facts available to refute the 4 major points raised by the Defendants in their motion are unavailable to the nonmoving party, Mr. Munoz. Mr. Munoz asserts that he participated in the OIE process to the extent that he could, choosing to have his counsel communicate for him as opposed to making a statement, because of the pending criminal case hanging over his head, therefore he made no statements to the OIE investigators.

For example, his lawyer sent a request to the OIE investigator, Nick Royal on June 1, 2020 (Exhibit A). In that email, which was not the first that he sent to OIE during this process, his counsel requested that MSU dismiss the OIE case, because of the fact that,

under the new administrative rules interpreting Title IX, recipient-universities are to demur in pursuing an OIE claim when there is no complainant. No one other than Defendants or their subservient agents know why this answer was given. If the answer was given because MSU intentionally intended to harm Mr. Munoz's future because of the interest in generating statistics to report to the Department of Education, then there is little doubt that the case should not be dismissed. It should not be dismissed without mining this evidence.

Mr. Munoz is forced to respond to many of the Defendants' allegations in their motion with his hands tied behind his back in the absence of discovery. FRCP 56 allows the court to deny or delay in granting a motion for summary judgment in such an instance under FRCP 56(d):

> **"(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> **(1)** defer considering the motion or deny it;
>
> **(2)** allow time to obtain affidavits or declarations or to take discovery; or
>
> **(3)** issue any other appropriate order." USCS Fed Rules Civ Proc R 56

Mr. Munoz asks this court to treat his counsel's signature on this response as the necessary affidavit or declaration that he cannot present facts essential to justify his opposition to the motion. Further, to the extent that the Defendants' support their position with inadmissible evidence such as citations to police reports, (see brief at pp 2-3) those are objected-to as facts not supported by admissible evidence under FRCP 56(c)(2).

The Defendants assert that Mr. Munoz makes "conclusory" allegations that the result would have been different in this case had he been afforded due process, (Brief, p.

9, para 2). In other words, they say that there are no facts asserted by Mr. Munoz to show this court that the result would have been different. Mr. Munoz needs to conduct discovery to learn first-hand what facts exist, what they would have shown; what facts are disputable and what allegations are wrong or out of context (for example, his alleged extrajudicial admissions to law enforcement). In any event, his allegation in the Second Amended Complaint that the "outcome would have been different" should be treated as true under FRCP 12(b)(6).

Further, MSU could agree to have a hearing. If there is no hearing of any sort but the result of the OIE process is major discipline, that is a deprivation of due process and MSU should be subjected to an order from this court to not release his transcript, student record or disciplinary record reflecting the discipline imposed for the alleged stalking or the "warning letter" over his alleged violation of the discipline for responding to a professor's email after the suspension was announced.

The point of the lawsuit is that a university cannot impose major disciplinary action against one of its students based solely on the statements of 2 police officers and a police cadet, even if they claim, as Defendants assert in their brief, that Mr. Munoz made admissions to the alleged conduct without even so much as a hearing. The MSU policy attached as Exhibit 2 to Defendants' brief (Ecf 53) requires that the respondent in an OIE investigation is entitled to a presumption that the conduct alleged in an OIE complaint did not occur, which is the primary function of a hearing – to determine if claims are supported by evidence: "A respondent is presumed not to have violated the policy unless a preponderance of the evidence establishes a policy violation," (Exh 2, "RVSM Policy", Ecf

53) Mr. Munoz never had a hearing, the decision was based on non-sworn hearsay statements, none of which were actually made by Student 1 herself.

Another example of the deprivation of due process is that no complainant even made a complaint about his conduct. There has to be a reason why this occurred and there has to be a witness who can answer and fortunately those answers can be learned … via the discovery process. The facts will reveal in discovery that the OIE investigator literally said to Mr. Munoz's counsel when counsel asked for confirmation that there is no complainant "OIE is investigating and the *University is the claimant*" in an email exchange on March 11, 2020. Of course, the fact that Mr. Munoz's counsel was frequently responding to the investigator's emails and was also initiating email exchanges with questions as well as the request to dismiss also constitutes "participation" - which refutes this waiver claim by the Defendants.

The underlying issue in the OIE investigation was stalking. Stalking is defined in the RVSM Policy as:

> "…engaging in a course of conduct that is directed at a specific person that would cause a reasonable person to feel fear for themselves or for others, or to suffer substantial emotional distress," (RVSM Policy, Exh 2, ecf 53)

The credibility of Student 1 was an issue regardless of any position that Mr. Munoz took or takes regarding the accuracy or legitimacy of some or all of the allegations (again, this is not Mr. Munoz "admitting" to the allegations as the Defendants keep attempting to establish). Student 1's credibility was at issue. The credibility of a witness is always an issue, *People v Mills,* 450 Mich 61 (1995)(superseded by statute on other grounds), cited by *People v Pratt*, Docket No. 284299, LEXIS 1294, MI Ct. of Appeals, June 11, 2009.

The credibility of an accuser is always subject to attack by cross examination, *Davis v Alaska,* 415 US 308 (1974); *Douglas v Alabama*, 380 US 415, 419 (1965).

Under FRCP 56, the Defendants have the burden on four issues:

(1) has the moving party clearly and convincingly established an absence of material facts;

(2) if so, has plaintiff presented sufficient facts to establish all elements of asserted claims or defenses;

(3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under applicable law;

(4) Are there genuine factual issues with respect to those material facts under governing law, *Carreno v DOJI, Inc.* 668 F Supp 2nd 1053 (MD Tenn 2009).

The main contentions by the Defendants in their motion seem to be:

(1) They cannot be sued because no individual participation was alleged;

(2) Mr. Munoz cannot claim damages because of the 11th Amendment;

(3) Mr. Munoz did not participate in the process;

(4) He was not entitled to a process other than the 3 hearsay statements that were given to OIE.

(5) He has not alleged a 1st Amendment claim and cannot make a causal connection between the secondary discipline but it was not discipline in the first place.

On every single one of the issues except for issue (2), Mr. Munoz does not have access to the facts in order to refute the Defendants' positions (other than about a half-dozen emails between his lawyer and the OIE investigator).  Discovery is necessary before this motion is decided. Too many questions are left unanswered – here is a non-exhaustive sampling of some others beyond what was stated above:

(1) Did the officers who interviewed either Student 1 or Mr. Munoz record the interviews, take notes or somehow ensure the accuracy of their memorialization of these statements;

7

(2) The reason that Student 1 did not wish to participate;

(3) Is there evidence that Mr. Munoz stalked Student 1 in violation of the policy;

(4) Whether there is an independent witness able to identify either Mr. Munoz or Student 1 on this video that the Defendants seem to rely on so heavily as "proof" that he stalked Student 1;

(5) The reason why OIE proceeded without the existence of a complainant;

(6) The reason why the professor who emailed him, thus prompting the prohibited response email by Mr. Munoz, did so knowing that he had just been suspended; or whether she was not appraised of that suspension and if so why his professors were not told that Mr. Munoz was prohibited from contacting them if he was subject to discipline for contacting them even if he did not know that he was disciplined.

As to the damages issue raised by the Defendants again in their 2nd brief in support of their motion to dismiss, Mr. Munoz is seeking prospective injunctive relief in the form of an order that MSU may not release any documentation of the suspension or the warning letter. The standard for the movant is "clear and convincing" and they should not be allowed to satisfy it when they hold almost every stick of evidence in the woodpile of facts without letting Mr. Munoz engage in any discovery whatsoever.

### **ARGUMENT**

**a. Plaintiff can maintain a claim under Section 1983 against Defendants.**

**I. Defendants can still be sued in their official capacity for injunctive or other equitable relief under Section 1983**

Defendants cite to *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (Brief, p 4, para 1) in support of their argument that they should be granted Eleventh Amendment immunity. However, *Will* also states that for the purposes of obtaining injunctive or other

forms of equitable relief, a state official would be considered a "person" for the purposes of Section 1983 and thus not entitled to immunity:

> Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Kentucky* v. *Graham*, 473 U.S., at 167, n. 14; *Ex parte Young*, 209 U.S. 123, 159-160 (1908). This distinction is "commonplace in sovereign immunity doctrine," L. Tribe, American Constitutional Law § 3-27, p. 190, n. 3 (2d ed. 1988), and would not have been foreign to the 19th-century Congress that enacted § 1983, see, *e. g., In re Ayers*, 123 U.S. 443, 506-507 (1887); *United States* v. *Lee*, 106 U.S. 196, 219-222 (1882); *Board of Liquidation* v. *McComb*, 92 U.S. 531, 541 (1876); *Osborn* v. *Bank of United States*, 9 Wheat. 738 (1824). *City of Kenosha* v. *Bruno*, 412 U.S. 507, 513 (1973), on which Justice Stevens relies, see *post*, at 93, n. 8, is not to the contrary.
>
> *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)

In Plaintiff's Second Amended Complaint, Mr. Munoz requested the following injunctive relief (see paragraph 81 of Plaintiff's Second Amended Complaint):

1. A prospective injunction against all named Defendants in imposing new discipline;

2. A prospective injunction from releasing a disciplinary record or transcript that reflects the current discipline or the "new" discipline or in the alternative an order requiring the Defendants to excise the records (Ecf 39)

Mr. Munoz also requested equitable relief as part of the closing paragraph of his Complaint.  Since Mr. Munoz requested injunctive or other forms of equitable relief in his Complaint, these portions of his Complaint are not barred and thus dismissal under Rule 12(b)(6) would be improper.

## II.  Defendants can be sued in their individual capacities for violations under Section 1983

Federal courts have recognized that sovereign immunity does not extend to individuals and claims against state officers in their individual capacity can still pursued under section 1983.See *Lewis v. Clarke*, 137 S. Ct. 1285, 1294, (2017) and *Caulker v. Mich. State* Univ., 09-CV-125, LEXIS 101733, (W.D. M.I. November 2, 2009).

Here, Mr. Munoz has alleged that the individual Defendants violated both federal law and MSU policy through their actions (see paragraph 78).  The exact nature and extent of these violations will be determined during discovery.  Defendants' claim concerning "insufficient facts" having been pled is improper under Rule 12(b)(6). All factual allegations must be construed in favor of Mr. Munoz as the non-moving party.  To the extent this Court finds the factual allegations insufficient, Plaintiff should be allowed to amend his Complaint.

### b.  Plaintiff's procedural due process claim is valid.

1.  **Plaintiff was not provided all process to which he was constitutionally due.**

2.  **Plaintiff never waived his procedural due process claim.**

3.  **Plaintiff has sufficiently alleged a harm that would support a procedural due process claim because any prospective employer or graduate school will either have to decide whether to reject him because he refuses to release his student file or decide whether to reject him because of the history reflected in that file – Mr. Munoz has to choose between outcomes that are bad and worse -- without relief from this Court.**

There was no Complainant who made any direct statement, either to the investigator or at a hearing. A Hearing of some nature is legally-required because the

credibility of a witness is always at issue. In this case, it appears that Student 1 was both unwilling to participate in the OIE process and did not want OIE to initiate its process in the first place. Therefore, Mr. Munoz had no opportunity to be heard by virtue of his advocate testing the accuracy or veracity of the stalking claims through cross examination.

The ability to cross-examine witnesses is at the heart of a procedure that affords the litigants due process, *Doe v University of Cincinnati*, 872 F.3d at 399–402; *Flaim v. Med. College of Ohio*, 418 F.3d 629, (6th Cir. 2005). In *Doe*, the 6th Circuit held that a district court did not err in issuing an injunction preliminarily, when he was not provided with any sort of hearing with the right to confront whatsoever his accuser, *Doe* at 399. The Court held "State universities must afford students minimum due process protections before issuing significant disciplinary decisions, *ibid*. This set of facts could not be more parallel. The Defendants may claim that Plaintiff-Student's extra-judicial statements to law enforcement officers obviate the need for any type of hearing, but that claim fails to recognize that police officers who take statements are not always accurate, perfect in their fidelity to the context of those statements and without bias. None of this was remotely fair or just – and just like the *Doe v Cincinnati* court reinstated the status quo with an injunction in that case, this court should send the same message in this one. A disciplinary procedure that affects the academic standing of a litigant in a major way must follow the law with strict adherence. *Doe v Baum,* 903 F3d 575, 581 (6th Cir. 2018).

Regarding the Defendants' reliance on *Flaim*, the Court in the *Flaim* case stated a student facing discipline is entitled to two basic due process requirements: (1) notice of

alleged violations and (2) an opportunity to be heard. See *Flaim* at p. 634. Mr. Munoz was not given an opportunity to be heard prior to Defendants' decision to suspend him.

An opportunity to be heard can and should mean an argument by a student's representative or lawyer and the ability to confront and cross-examine the accuser in a hearing. A litigant does not necessarily have to "testify" in order to be heard. That is often the job of the advocate and for Defendants to argue that because Mr. Munoz himself did not make a statement because of the 5th Amendment's yoke he had an opportunity to be heard. He did not have an opportunity to be heard.

Regarding the "opportunity to be heard" the Court in *Flaim* stated the following:

> The hearing, whether formal, informal, live or not, must be meaningful and must provide the accused with the opportunity to "respond, explain, and defend." *Gorman*, 837 F.2d at 13. If the hearing is live, the accused has a right to be present for all significant portions of the hearing. Courts have generally been unanimous, however, in concluding that hearings need not be open to the public, *see e.g.*, *Hart v. Ferris State Coll.*, 557 F. Supp. 1379, 1389 (W.D. Mich. 1983) (no right to open hearing), that neither rules of evidence nor rules of civil or criminal procedure need be applied, *see e.g., Nash*, 812 F.2d at 665 (no right to use of formal rules of evidence); *Henson v. Honor Comm. of Univ. of Va.*, 719 F.2d 69, 73 (4th Cir. 1983) (same); *Morale v. Grigel*, 422 F. Supp. 988, 1000-01 (D.N.H. 1976) (exclusionary rule need not be applied), and witnesses need not be placed under oath, *see e.g., Knapp v. Jr.  Coll. Dist.*, 879 S.W.2d 588, 592 (Mo.Ct. App. 1994).

Like Mr. Munoz, the Plaintiff in *Flaim* was facing criminal charges. He was arrested in October, 2001 and suspended from his college, pending investigation, two days later.  He pled guilty to a drug charge in June 2002 and his hearing was held on June 28, 2002, after his plea.

**2 & 3 Waiver and Sufficient Harm**

Mr. Munoz did not waive his due process claims. "[W]aiver is the intentional relinquishment or abandonment of a known right." *U.S. v. Doxey,* 833 F.3d 692, 702 (6th

Cir. 2016). Mr. Munoz was never offered a hearing and therefore could not intentionally relinquish or abandon his right to said hearing.

The flaw with the Defendants' argument that a failure to participate can result in waiver, is that Mr. Munoz must have been given the opportunity to exercise a right in order to be able to waive it. In *Farhat v. Jopke,* 370 F.3d 580, 587 (6th Cir. 2004), cited by Defendants, the Plaintiff was offered to attend a post-termination hearing but refused to do so.  The Court held that this failure "waived his procedural due process claim." *Id.* at 596. However, the Court also noted that it is the "opportunity for a post-deprivation hearing…that is required for due process. *Id.* at 596. Similarly, in *Deters,* a suspended attorney alleged that his suspension violated due process but waived his claim by withdrawing his reinstatement application. *Deters v. Kentucky Bar Ass'n*, 646 Fed. Appx. 468, 477 (6th Cir. 2016).   In *Humphrey,* a sheriff deputy was provided with the right to request review of his termination but failed to do so. *Humphrey v. Scott Cty. Fiscal Court*, 211 Fed. Appx. 390, 392 (6th Cir. 2006). The Court held that he "waived his procedural due process claim by failing to pursue the administrative remedies provided by Kentucky Law." *Id.* Finally, in *Case W. Reserve Univ.,* a student subject of a Title IX investigation was offered the choice between a formal board hearing and an informal administrative hearing and chose the informal option. *Doe v. Case W. Reserve Univ.*, 809 F. App'x 276, 278 (6th Cir. 2020). The Court held that he could not later object to this 'when he received exactly the procedure he requested.'" *Id.* at 282.

Furthermore, Mr. Munoz did participate in the process: he requested to be kept updated on the OIE investigation; his attorney confirmed with the Defendant that they were pursuing the investigation without a complainant; his attorney asked that the matter

13

be closed in light of new federal rules. Moreover, Mr. Munoz filed an objection to the Final Investigative Report on August 13, 2020 but was told that he could not submit an objection and could only appeal once the final disciplinary recommendation was made. While he did not take part in the investigation because of the ongoing criminal case, he did remain engaged in the process.

The Defendant argues that it does not matter that the Plaintiff refused to attend the meeting because his criminal case was ongoing. However, in both cases cited in the brief in support, the subject of the investigation was offered a final hearing. In *Herrell*, the student was given the opportunity of a sanctions hearing but failed to attend because of ongoing criminal proceedings. *Herrell v. Benson,* 261 F. Supp. 3d 772, 774-775 (E.D. Ky. 2017). In *Roe v. Dir., Miami Univ,* the student refused to take part in the investigation until his criminal case was finalized. *Roe v. Dir., Miami Univ., Office of Cmty. Standards*, No. 1:19-cv-136, 2019 U.S. Dist. LEXIS 55246, at 2 (S.D. Ohio Apr. 1, 2019). However, he declined to attend a procedural review of the disciplinary process and then sought to delay the disciplinary hearing. *Id.* at 4-5.

Again, in both cases the student had the opportunity of a post investigation hearing. In this case the Plaintiff has not. There has been no opportunity to contest the result of the investigation in a hearing. Therefore, the Plaintiff did participate in the process and did not waive his right to a post investigation hearing because he was never offered one.

There is no dispute that a hearing was never conducted in this case. The Defendant-University's response is that the lack of retroactive applicability of the changes to the administrative rules promulgated by the Office of Civil Rights/Department of

14

Education (OCR/DOE) *34 CFR part 106* means that schools are not required to follow the *34 CFR 106* as amended effective August 14, 2020. Just because the Defendant-University believes it has tacit endorsement of the OCR/DOE does not mean that the Defendant-University is allowed to impose major discipline against Plaintiff-Student in violation of his/her constitutional due process rights. Further, Defendants' decision to suspend Mr. Munoz affixes an indelible stain on his academic record, separating him from the University and putting him through embarrassment – acting under the color of law.

There was nothing reasonable about the process in this case, especially considering how long it took: from November, 2019 until October, 2020. *Ultimately* there were all of 3 witnesses and no hearing. The timelines for the Defendant-University for the then-existing policy were so fractured that it is inconceivable that all the investigator did was interview 3 hearsay witnesses and then prepare a report/recommendation. There was no adherence to the law. The failure to follow the timeline and/or the failure to put any witnesses through cross-examination and the failure to presume that Plaintiff-Student was not responsible for a violation of the policy are the chief reasons that this matter should not be a close call and Plaintiff-Student should prevail. He should at least be permitted discovery to learn why this case was handled in the manner that it was before this Court gives meaningful consideration to a motion to dismiss.

Defendants failure to provide Mr. Munoz with an opportunity to be heard prior to the hearing violated his due process rights as recognized in *Flaim*.  Mr. Munoz has a proper claim and Defendants' motion should be denied. The fact that the 1-semester suspension constitutes major discipline, no hearing was held and now any time a prospective employer or a graduate school wants to see Mr. Munoz's student file, Mr.

Munoz will likely lose a job or an admission to a competing candidate who does not have discipline on his record is a sufficient harm to allow this lawsuit to go forward and to enjoin MSU via either the Registrar's Office or the Dean of Students from disclosing the discipline history and warning letter that came after.

### c.  Plaintiff's First Amendment retaliation claim is valid.

Plaintiff properly pled a First Amendment retaliation claim.  To properly plead a First Amendment retaliation claim, a Plaintiff must plead the following:

(1) the plaintiff engaged in constitutionally protected conduct;

(2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and

(3) the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583, 2012 citing *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

Defendants do not dispute that Plaintiff engaged in a constitutionally protected activity, so this issue is not in dispute.  Defendants first argue that the conduct of Defendants did not constitute an "adverse action" sufficient to sustain a retaliation claim.

**Defendants' actions constitute an "adverse action" for the purposes of a First Amendment Retaliation Claim.**

In this case, Plaintiff's attorney wrote a letter to Defendants advising that Plaintiff would continue to seek legal remedies to contest his unlawful suspension from Michigan State University (see paragraphs 82-89 of Plaintiff's Second Amended Complaint). Plaintiff-counsel's letter was sent on October 9, 2020.  Just four days later (October 13, 2020), Plaintiff received notice that Defendants were seeking to take disciplinary action

against him for returning an email sent from a professor, conduct allegedly in violation of the terms of his suspension.   A meeting was held on this matter on October 29, 2020 via Zoom.  As a result of this meeting, a "warning letter" was placed in Plaintiff's student file. Based upon information and belief, this letter will be posted in Plaintiff's transcript file and potentially other places where it can viewed by graduate schools, potential employers, and other entities that request information from that file.  The "warning letter" would no doubt have a negative impact on Plaintiff's ability to further his education and employment opportunities for years to come.

Defendants rely on one case in support of their claim that the "warning letter" in Plaintiff's file is not an "adverse action," *Coleman v. Mohlman*, 19-cv-13494 LEXIS 174463, (E.D.M.I., 2020).  First, *Coleman* is unpublished and thus not binding and does need to be considered by this Court.  Further the facts in *Coleman* are distinguishable from this case.

The Plaintiff in *Coleman* was a prisoner who was cited for disciplinary conduct and alleged retaliation when he filed a grievance against his supervisor.  The Plaintiff received a "warning notice" from the prison where the letter only stated that if he received three "warnings" he would be removed from his work detail.  He also allegedly participated in a meeting with prison personnel.  The Court ruled that the "warning letter" did not constitute an "adverse action" for the purposes of First Amendment retaliation since the only consequence was for that Plaintiff to attend a meeting.  The facts in this case are different as the letter involved in Mr. Munoz's case will be available to others to view such as graduate schools and potential employers and thus have a negative impact on Mr.

Munoz's ability to further his education and his employment opportunities.  Mr. Munoz suffered recriminations far greater than the Plaintiff in *Coleman*.

The Coleman case also cites to *Melton v. United States DOL*, 373 Fed. Appx. 572, (2010).  This case is factually distinguishable from Melton as the disciplinary letter involved in Melton was ultimately removed from that Plaintiff's file.

**Mr. Munoz suffered more than just the generalized reputational damages**

Defendants also argue that Mr. Munoz has only alleged "generalized reputational damages" and such claims are barred. They cited *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 584-85 (6th Cir. 2012).  First, the pages Defendants have cited in their motion do not state that "generalized reputational damages" do not satisfy the requirements to sustain a complaint for First Amendment retaliation.  Further, the Court in *Wurzelbacher* stated that part of its rationale in dismissing the Plaintiff's claim was that the information allegedly obtained by Defendants was never publicly disclosed, *Wurzelbacher* at 584 citing *Brown v. Crowley*, 312 F.3d 782, (6th Cir. 2002).  That would not be the case with Mr. Munoz where the "warning letter" would be disclosed to any graduate school or employer that obtained a copy of Mr. Munoz's file.

The Court in *Wurzelbacher* also cited cases where the alleged damages would be consequential and sustain a retaliation claim.   These damages include a threat to economic livelihood, see *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, (6th Cir. 2010) and the public disclosure of intimate or embarrassing information, see *Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998).   Both of these harms would occur in Mr. Munoz's case if a prospective injunction is not granted.  In short, Mr. Munoz has pled sufficient facts to show damages to sustain a retaliation claim and dismissal under Rule 12(b)(6) would not be

proper.  To the extent there are any factual deficiencies in Plaintiff's Complaint, Plaintiff

should be allowed to amend them further.

## THE CAUSAL CONNECTION IS PROPERLY PLED AND CAN BE ESTABLISHED

Plaintiff has properly pled and can establish a causal connection between his

efforts to assert his First Amendment rights and the "new discipline against him."  As pled

in his Complaint, Defendants had not sought any additional disciplinary action against Mr.

Munoz following Defendants' decision to uphold Mr. Munoz's suspension on October 5,

2020.   Four days later, October 9, 2020, Mr. Munoz advised Defendants he was

considering legal action to challenge the validity on their disciplinary policies.  The "new

discipline" against Mr. Munoz was initiated on October 13, 2020.   The discipline

concerned a responsive-email Mr. Munoz sent to a professor after she emailed him about

his class within a very short time of the announcement of the suspension.  Mr. Munoz

was not on MSU property when the email was sent and it is questionable whether or not

his conduct was even a violation of the terms of this suspension.  These facts strongly

suggest a retaliatory motive on the part of Defendants to pursue this "new discipline"

against Mr. Munoz after he advised them that he was seeking to enforce his rights in

Court and question their practices.

The facts as stated in Mr. Munoz's Complaint satisfy the "but-for" causation

required to sustain this count.  "But-for" Mr. Munoz advising Defendants of his right to

seek legal action against them to challenge their decision to suspend him, it is unlikely

they would have sought any additional discipline of him and put the "warning letter" in his

file which can be viewed by any third-party requesting that file.  Defendants in their motion

have attempted to question the factual sufficiency of which Defendant, if any, knew about Plaintiff's intent to sue them.  Factual matters such as these are irrelevant for the purposes of a Motion to Dismiss under Rule 12(b)(6).  Further, this Court is required to accept all factual as pled as true and construed in the light most favorable to Mr. Munoz pursuant to *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  To the extent the Court finds any of the factual allegations deficient, Plaintiff should be allowed to amend his Complaint.

## Conclusion

For the reasons stated above, Mr. Munoz asks this court to deny the relief requested by the Defendants on the merits or grant Mr. Munoz other relief under FRCP 56(c).

Respectfully submitted,

Date:  June 7, 2021

/s/ Michael J. Nichols
Michael J. Nichols (P59391)
Attorney for Xavier Munoz

## Certification of Word-Count Compliance

I certify that the word count complies with the word count requirement of L Civ R 7.2(b)(ii). The word count is 5,794. The Microsoft Word Count feature was used to verify the word count.

Date:  June 7, 2021

/s/ Michael J. Nichols
Michael J. Nichols (P59391)
Attorney for Xavier Munoz